# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| DIVERSIFIED PRODUCTION LLC, ET AL. | CIVIL ACTION NO. 24-0942 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| COLUMBINE II LP, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss for Lack of Jurisdiction filed by Defendants Columbine II Limited Partnership ("Columbine"), Queenstown Oil & Gas, Inc. ("Queenstown"), and Aviva, Inc.'s ("Aviva") (collectively, "Defendants"). See Record Document 13. Plaintiffs Diversified Production LLC ("Diversified") and DP Legacy Central LLC ("DP Legacy") (collectively, "Plaintiffs") opposed. See Record Document 15. Defendants replied. See Record Document 16. For the reasons set forth below, Defendants' Motion to Dismiss for Lack of Jurisdiction (Record Document 13) is **GRANTED**, and Plaintiffs' claims against Defendants are **DISMISSED WITHOUT PREJUDICE**. The Court, sue sponte, gives Plaintiffs' the opportunity to request leave to amend their First Amended Complaint to cure the deficiencies identified by the Court below. This opportunity does not mean the Court will automatically grant leave; rather, the Court, in its discretion, may grant leave if it deems appropriate. Additionally, amendment does not automatically mean this Court will have personal jurisdiction; rather, Plaintiffs will have to sufficiently plead and establish personal jurisdiction.

Given the potential for a second amended complaint, the Court will not decide the merits of Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (Record Document 13)

at this time. "Under well-established precedent, 'a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).'" Molzan v. Bellagreen Holdings, L.L.C., 112 F. 4th 323, 336 (5th Cir. 2024) (quoting Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Co., 549 U.S. 422, 430–31, 127 S. Ct. 1184 (2007) (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 93–102, 118 S. Ct. 1003 (1998))). "Absent such jurisdiction, 'the court cannot proceed at all in any cause.'" Id. Because the Court is giving Plaintiffs the opportunity to request leave to amend their First Amended Complaint, the Court is unsure, at this time, whether it has personal jurisdiction over Aviva. Therefore, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (Record Document 13) is **DENIED WITHOUT PREJUDICE**. Defendants may reassert this Motion if and when Plaintiffs file a second amended complaint.

## BACKGROUND

Plaintiffs consist of a mineral lessee and an operator of numerous natural gas wells in Webster Parish, Louisiana, which were the subject of four Special Warranty Deeds between CMP Viva LP ("CMP"), Columbine, Queenstown, and A.G.S. Limited Partnership. See Record Document 5 at ¶ 2. The Special Warranty Deeds conveyed to CMP, *inter alia*, overriding royalty interests in 44 wells operated by Diversified (the "Wells"). See id. The Special Warranty Deeds bear an effective date of October 1, 2021. See id.

Plaintiffs allege that Columbine never properly nor sufficiently notified them of the Special Warranty Deeds conveying Columbine's overriding royalty interests in the Wells to CMP. See id. at ¶ 4. Plaintiffs claim that as a result, they continued to pay Columbine

the overriding royalties for over two years. See id. Plaintiffs assert that Columbine continued to accept payment for the overriding royalties without notifying them it had conveyed its overriding royalty interests in the Wells to CMP. See id. at ¶ 5.

On April 11, 2024, CMP sent a demand to Plaintiffs calling attention to the Special Warranty Deeds and demanding it be paid the overriding royalty interests in the Wells from the effective date of the Special Warranty Deeds. See id. at ¶ 6. To avoid the potential penalties prescribed by the Louisiana Mineral Code for failing to pay overriding royalties, Plaintiffs recognized the change in record title from the effective date of the Special Warranty Deeds and paid CMP for the overriding royalty interests that CMP acquired from Columbine. See id. at ¶ 7. On June 11, 2024, Plaintiffs made demand on Columbine for repayment of the overpaid overriding royalties which were not due to Columbine but instead were due to CMP (the "ORRI Overpayment"). See id. at ¶ 8. The June 11 correspondence (the "Demand") is attached to Plaintiffs' Amended Complaint as Exhibit A. See id.

On June 27, 2024, in response to a request by counsel for Columbine, counsel for Plaintiffs provided a detailed accounting showing both production dates and payment dates of the overpayment demanded by Plaintiffs. See id. at ¶ 9. Plaintiffs allege Columbine has failed to either repay the ORRI Overpayment or meaningfully respond to the Demand. See id. Plaintiffs assert three claims: (1) Columbine transferred its overriding royalty interest in the Wells to CMP but wrongfully and willfully continued to accept payment for those interests for over two years. Columbine is obligated to repay the ORRI Overpayment, plus legal interest from the date of each overpayment following the effective date of the Special Warranty Deeds; (2) Pursuant to Louisiana Civil Code article

3

2299, "[a] person who has received a payment of a thing not owed to him is bound to restore it to the person from who he received it." Columbine received the ORRI Overpayment from Plaintiffs for interests it did not own, and which were not due to it. Therefore, Columbine is bound to restore the ORRI Overpayment to Plaintiffs; and (3) As to Queenstown and Aviva, under Louisiana law, the partners of a partnership are secondarily liable for the debts of the partnership. Columbine's general partner is Queenstown. On information and belief, Columbine's limited partner, Aviva, participates in the control of the business conducted by Columbine. Accordingly, both Queenstown and Aviva are secondarily liable to Plaintiffs for Columbine's obligation to repay the ORRI Overpayment. See id. at ¶¶ 10–12.

Plaintiffs claim the Court has personal jurisdiction over Defendants because (1) Defendants have purposefully directed their activities toward Louisiana and availed themselves of the privileges of conducting activities here; (2) Plaintiffs' claims arise from Defendants' contacts with Louisiana; and (3) the exercise of personal jurisdiction is fair and reasonable. See id. at ¶ 17. Plaintiffs allege that Columbine purposefully directed its activities toward Louisiana and availed itself of the privileges of conducting activities in Louisiana. See id. at ¶ 18. Namely, Plaintiffs assert that Columbine (1) transacted business in Louisiana; (2) caused damage by omission in Louisiana by failing to notify Plaintiffs of its transfer of ownership of overriding royalty interests but accepting the OORI Overpayments; (3) derived revenue from mineral interests in Louisiana before and after that omission; and (4) held ownership interests in real rights in numerous immovable properties in Louisiana. See id.

Plaintiffs also allege that Queenstown and Aviva purposefully directed their activities toward Louisiana by acting as agents for Columbine in transacting Columbine's business relating to mineral rights in Louisiana and/or by failing to notify Plaintiffs of Columbine's transfer of its overriding royalty interests on Columbine's behalf. See id. at ¶ 19. Furthermore, as Columbine's partners, Plaintiffs claim that Queenstown and Aviva benefitted from revenue derived from Columbine's business and mineral interests in Louisiana and receiving the ORRI Overpayments. See id.

Plaintiffs assert that their claims arise from Defendants' contacts with Louisiana, i.e., specific personal jurisdiction. See id. at ¶ 20. Moreover, they allege that the exercise of personal jurisdiction would be fair and reasonable. See id. at ¶ 21. Plaintiffs claim it would not be burdensome for Defendants to litigate in Louisiana, as they conduct business here, and it is foreseeable that they might be haled into court in Louisiana relating to those business operations. See id. Furthermore, they allege Louisiana has an interest in redressing commercial disputes relating to minerals extracted from its lands. See id. Plaintiffs claim Louisiana is the most appropriate forum considering it is the state where the mineral interests are located, and thus, furthers the interstate judicial system's interest in the most efficient resolution of controversies. See id.

## LAW AND ANALYSIS

**I. Personal Jurisdiction.**

"When a defendant timely questions a federal district court's in personam jurisdiction, the plaintiff has the burden of proving that the court has jurisdiction over the defendant." N. Am. Land Dev. Corp. v. Hakim, No. 23-00452, 2024 WL 1843961, at *2

(W.D. La. Apr. 12, 2024). If a motion to dismiss for lack of personal jurisdiction is resolved without holding an evidentiary hearing, the plaintiff is required to "make a prima facie showing of the jurisdictional facts." Id. See Freudensprung v. Offshore Technical Servs., Inc., 379 F. 3d 327, 343 (5th Cir. 2004). In determining whether a plaintiff has made a prima facie showing, "the court 'must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [his or her] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation.'" Id. (citation and internal quotation marks omitted) (quoting Travelers Indem. Co. v. Calvert Fire Ins. Co., 798 F. 2d 826, 831B32 (5th Cir. 1986), on reh'g in part, 836 F. 2d 850 (5th Cir. 1988)). However, a court does not have to "credit [a] plaintiff['s] conclusory allegations, even if uncontroverted." Id. See Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F. 3d 865, 869 (5th Cir. 2001) (citations omitted).

The Fifth Circuit has held that "[a] federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as, (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not transgress due process protections under the United States Constitution." Id. at *3. See Latshaw v. Johnson, 167 F. 3d 208, 211 (5th Cir. 1999). "Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution." Id. See LA. REV. STAT. § 13:3201(B); LA. CODE CIV. P. art. 6(B). Thus, "the sole inquiry is whether exercising in personam jurisdiction over the defendant comports with federal due process." Id. (italics omitted) (citing Jackson v. Tanfoglio Giuseppe, S.R.L., 615 F. 3d 579, 584 (5th Cir. 2010) (citation omitted)).

To satisfy due process requirements, "the plaintiff must establish that the defendant has 'certain minimum contracts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Id. (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923, 131 S. Ct. 2846, 2853 (2011) (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316, 66 S. Ct. 154 (1945))). Following Int'l Shoe, "the Supreme Court has 'differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction'" when deciding whether the defendant has certain minimum contacts with the forum state. Id. (italics omitted) (quoting Goodyear, 564 U.S. at 919; Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty., 582 U.S. 255, 137 S. Ct. 1773, 1780 (2017)).

"General jurisdiction requires that a defendant's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State.'" Pace v. Cirrus Design Corp., No. 23-60465, 2024 WL 2817567, at *3 (5th Cir. June 3, 2024) (quoting Daimler AG v. Bauman, 571 U.S. 117, 139, 134 S. Ct. 746, 758–59 (2014) (alterations and internal quotation marks omitted)). "'A corporation is at home where its place of incorporation and its principal place of business are located.'" Id. (quoting Pace v. Cirrus Design Corp., 93 F. 4th 879, 898 (5th Cir. 2024)). "[T]he Supreme Court has implicitly provided guidance by applying the paradigm for assessing a corporation's general jurisdiction to an LLC" and limited partnership. See Daimler, 571 U.S. at 118, 134 S. Ct. at 749 (assessing whether an LLC had general jurisdiction by looking to its place of incorporation and principal place of business); see also Stewart v. Marathon Petroleum Co. LP, 326 F. Supp. 3d 284, 292–95 (E.D. La. 2018) (in the context of a limited partnership).

"'Specific' jurisdiction exists when the 'plaintiff's cause of action…arises out of or results from the defendant's forum-related contacts.'" Hakim, 2024 WL 1843961, at *3 (quoting Willow Bend, L.L.C. v. Downtown ABQ Partners, L.L.C., 612 F. 3d 390, 392 (5th Cir. 2010)). Specific jurisdiction "'depends on an affiliation[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation).'" Id. (quoting Walden v. Fiore, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121, n.6 (2014) (quoted source and internal quotation marks omitted)). "Specific jurisdiction is a claim-specific inquiry." Id. (citing Seiferth v. Helicopters Atuneros, Inc., 472 F. 3d 266, 274 (5th Cir. 2006)). Therefore, if a plaintiff asserts "'multiple claims that arise out of different forum contacts of the defendant,'" they must demonstrate specific jurisdiction for each claim. Id. (quoting Seiferth, 472 F. 3d at 274; McFadin v. Gerber, 587 F. 3d 753, 759 (5th Cir. 2009)).

When analyzing specific jurisdiction, the Fifth Circuit applies a three-step inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Id. at *3–4 (quoting Def. Distributed v. Grewal, 971 F. 3d 485, 490 (5th Cir. 2020) (quoting Seiferth, 472 F. 3d at 271). If a plaintiff successfully establishes the first two prongs, "then the burden shifts to defendant to show that exercising jurisdiction would prove unfair and unreasonable." Id. at *4. For jurisdiction to be "'consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.'" Id. (quoting Walden, 571 U.S. at 284, 134 S. Ct. at 1121). "The court must look to

8

the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." Id. Thus, "'[d]ue process requires that a defendant be haled into court in a forum State on h[er] own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts [s]he makes by interacting with other persons affiliated with the State.'" Id. (quoting Walden, 571 U.S. at 286, 134 S. Ct. at 1123) (citation omitted).

Following the minimum contacts determination, courts weigh five factors to determine whether the exercise of personal jurisdiction is fair and just. See Hardy v. Scandinavian Airlines Sys., 117 F. 4th 252, 267 (5th Cir. 2024). The factors are as follows: "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" Id. (quoting E. Concrete Materials, Inc. v. ACE Am. Ins. Co., 948 F. 3d 289, 298 (5th Cir. 2020) (quoting Luv N' care, Ltd. v Insta-Mix, Inc., 438 F. 3d 465, 473 (5th Cir. 2006))).

**II. Summary of the Arguments.**

Defendants ask the Court to dismiss Plaintiffs' claims because the Court lacks personal jurisdiction. See Record Document 13 at 7. Defendants argue that Plaintiffs' allegations contain no facts that identify the contacts they have with Louisiana or how Plaintiffs' claims arise from those alleged contacts. See id. at 9. They contend Plaintiffs do not identify what business Defendants allegedly transacted in Louisiana or when such transactions occurred. See id. Additionally, they assert that Plaintiffs do not identify what mineral interests in Louisiana Columbine allegedly derived revenue from or when

9

Columbine is alleged to have owned such mineral interests. See id. Furthermore, Defendants argue Plaintiffs have not identified what numerous immovable properties in Louisiana Columbine allegedly held ownership interest in, the nature of those alleged ownership interests, or when Columbine is alleged to have held those ownership interests. See id. at 9–10.

Defendants submit the same is true as to Plaintiffs' allegations about Queenstown and Aviva. See id. at 10. They argue Plaintiffs fail to describe what business relating to mineral rights in Louisiana Queenstown and Aviva allegedly transacted as Columbine's agents. See id. Additionally, Defendants assert that Plaintiffs fail to explain how Aviva acted as Columbine's agent with respect to any alleged contacts with Louisiana. See id. They contend Plaintiffs fail to explain how Queenstown and Aviva benefited from revenue derived from Columbine's unspecified business and mineral interests in Louisiana or from the royalty payments at issue. See id. Defendants ultimately submit that Plaintiffs have failed to make the prima facie showing required to exercise personal jurisdiction. See id.

Defendants also argue that general jurisdiction does not exist. See id. at 11. Defendants are all incorporated in Oklahoma and maintain a principal place of business in Denver, Colorado. See id. Columbine has not owned, leased, or rented any real or personal property in Louisiana since October 1, 2021. See id. On October 1, 2021, Columbine sold to a third party in Texas certain property interests located in Louisiana, including royalty interests for which Plaintiffs made the royalty payments at issue. See id. at 11–12. The royalty payments that Columbine received were received in Colorado. See id. at 12. Queenstown and Aviva also do not own, lease, or rent any real or personal property in Louisiana. See id. Defendants do not maintain any offices or bank accounts

10

in Louisiana, nor do they maintain any employees, shareholders, officers, or directors who reside in Louisiana. See id. Defendants contend that Plaintiff's bald assertions are legally insufficient to establish general jurisdiction. See id.

Defendants further argue specific jurisdiction does not exist because Plaintiffs' conclusory allegations are irrelevant as there is no evidence that such alleged transacted business or ownership interests are related to Plaintiffs' claims. See id. at 13. Moreover, Defendants assert that their receipt of or benefit from payments attributable to royalty interests in wells located in Louisiana fails to show the purposeful availment required to warrant exercising specific jurisdiction. See id. at 14–15. They submit that even though Plaintiffs erroneously made some of those royalty payments to Columbine, that does not establish minimum contacts with Louisiana because Columbine did not own the Louisiana property that generated to royalty payments. See id. at 15–16.

Furthermore, Defendants contend that exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice. See id. at 17. Defendants analyze the five factors. See id. First, subjecting Defendants to Louisiana jurisdiction would impose a severe burden on them. See id. Second, Louisiana has no interest in litigating this dispute. See id. Third, no obstacle would prevent Plaintiffs from receiving convenient and fair relief in Oklahoma or Colorado. See id. at 18. Fourth, the most efficient resolution of the controversy does not favor Louisiana because neither Plaintiffs nor Defendants are Louisiana entities or maintain their principal place of business in Louisiana. See id. Fifth, litigating in Louisiana would not advance any fundamental substantive social policy. See id.

Plaintiffs oppose, arguing the Motion should be denied. See Record Document 15. Plaintiffs assert that Defendants are subject to the Court's specific jurisdiction. See id. at 9. They contend Defendants have established minimum contacts by reaching out to Louisiana, acquiring immovable property in Louisiana, owning that property, and receiving fruits in the form of revenue for years. See id. at 11. Plaintiffs advance that this controversy is a direct consequence of Defendants' ownership of immovable property rights. See id. Additionally, Plaintiffs apply the "but for" test and argue their claims arise out of and relate to Defendants' ownership of immovable property in Louisiana. See id. at 13. They submit that but for Defendants acquisition and ownership of immovable property in Louisiana, the overpayment, which represents a continuing effect of their ownership and contacts with Louisiana, would not have occurred. See id. Plaintiffs assert that the overpayments are not random or fortuitous but rather a direct consequence of Defendants' ownership of immovable property interests in Louisiana. See id. at 13–14.

Plaintiffs also analyze the five factors and argue that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. See id. at 14. First, they submit that Defendants would not be overly burdened by litigation in Louisiana, as evidenced by their recent litigation history in Chesapeake Operating LLC v. Columbine II Ltd. P'ship, 55,017 (La. App. 2 Cir. 5/10/23), 361 So. 3d 1239. See id. Second, Louisiana has a legitimate and reasonable interest in resolving disputes relating to ownership of mineral interests in the state. See id. at 15. Third, Diversified has an interest in obtaining relief in Louisiana, which Plaintiffs contend is the most efficient forum to resolve this controversy. See id. Finally, Plaintiffs contend that Defendants distort the

12

issue in this case to try to escape jurisdiction because they have no substantive defense. See id.

Defendants reply, arguing there are three fatal flaws in Plaintiff's opposition. See Record Document 16 at 2. First, Plaintiffs attempt to create a connection between Defendants and Louisiana by incorrectly characterizing both the nature of this case and the claims. See id. Defendants characterize this dispute as involving equitable claims for money among non-residents of Louisiana. See id. Second, Plaintiffs confuse the contacts relevant to general jurisdiction with those relevant to specific jurisdiction. See id. The fact that Columbine acquired numerous assets in Louisiana and was a party to several lawsuits in Louisiana is irrelevant to specific and general jurisdiction. See id. Third, Plaintiffs' contention that specific jurisdiction exists because their claims arise out of or relate to Defendants' ownership of immovable property in Louisiana ignores both their claims and the acts they allege are the basis for them. See id. at 3. Defendants reiterate that the alleged wrongful acts occurred in Colorado, not Louisiana. See id.

**III. Analysis.**

As a threshold matter, the Court must determine whether it can exercise personal jurisdiction over Defendants. Plaintiffs' conclusory allegations that "Defendants have purposefully directed their activities toward Louisiana and availed themselves of the privileges of conducting activities here" are not sufficient for establishing personal jurisdiction. See Record Document 5 at ¶ 17. Simply claiming that Plaintiffs' claims "arise from [] Defendants' contacts with Louisiana, and [] the exercise of personal jurisdiction is fair and reasonable" is not enough to show that the Court can exercise personal jurisdiction over Defendants. See id.

13

The Court finds the parties do not dispute that Defendants are all incorporated in Oklahoma and have their principal place of business in Colorado. As to general jurisdiction, no Defendant is "at home" in Louisiana. In fact, Plaintiffs main arguments surround specific jurisdiction. Therefore, after analyzing the First Amended Complaint and relevant briefings, the Court finds the parties have made a concession that no general jurisdiction exists.

Even so, Plaintiffs may succeed under specific jurisdiction if they can plead a prima facie showing that Defendants have minimum contacts with Louisiana and all three causes of action arise out of or relate to those contacts. See Corbett v. Nan Riethmayer Phifer, No. 14-023, 2014 WL 12585665, at *3 (N.D. Tex. Oct. 23, 2014). Plaintiffs fail to make such a showing because their allegations are merely conclusory and do not meet the requirements to establish specific personal jurisdiction. It is unclear how their allegations claiming that Columbine transacted business in Louisiana and held ownership interests in real rights in numerous immovable properties in Louisiana arise out of and relate to the three causes of action. These business transactions and ownership interests could relate to any past transaction or interest, not necessarily the ones relating to the instant case.

Additionally, Plaintiffs assert that Columbine "derived revenue from mineral interests in [Louisiana] before and after that omission." See Record Document 6 at ¶ 18. The three causes of action here arise out of Defendants failure to notify Plaintiffs of the change of ownership and continuing to accept payments. This omission and receipt of payments occurred in Oklahoma, not Louisiana; thus, some of these contacts which give rise to the instant litigation did not occur in Louisiana.

Plaintiffs heavily refer to and apply the "but for" test in their opposition; however, the Fifth Circuit has not officially adopted the "but for" test, which was initially announced by the Ninth Circuit in <u>Shute v. Carnival Cruise Lines</u>, 897 F. 2d 377, 385 (9th Cir. 1990). <u>See</u> <u>Inmar Rx Solutions, Inc. v. Devos, Ltd.</u>, 786 Fed. Appx. 445, 451 fn 2. In fact, the Fifth Circuit in <u>Inmar</u> declined the plaintiffs' invitation to apply the "but for" test. <u>See id.</u> Thus, Plaintiffs need to specifically allege how Columbine's contacts arise out of an relate to each cause of action. They may refer to and apply the "but for" test, as other district courts within the Fifth Circuit have done, but their allegations need more specificity and factual support.

As to Queenstown and Aviva, Plaintiffs' assertions are also conclusory and speculative because they allege no specific facts on what business Queenstown and Aviva transacted on behalf of Columbine and how that business arises out of and relates to each cause of action. Furthermore, they fail to identify what authority imposes a duty on Queenstown and Aviva to notify Diversified of the transfer of ownership. Simply stating that Queenstown and Aviva benefitted from revenue is not enough to establish they purposefully directed activities toward Louisiana and purposefully availed themselves of the privileges of conducting activities there. The fact that Queenstown and Aviva were Columbine's partners and allegedly acted as its agents is not sufficient for the purposes of specific jurisdiction.

The Court applies the five factor test to determine whether exercising personal jurisdiction here would be fair and reasonable. First, litigating in Louisiana could be burdensome for Defendants because they have minimal contacts with the forum state. They do not own, rent, or lease property in Louisiana anymore, and they are incorporated

in Oklahoma and have their principal place of business in Colorado. Plaintiffs point to past litigation in Louisiana involving Columbine; however, past litigation is not relevant to the instant case. Personal jurisdiction is assessed on a case-by-case basis, so past Louisiana litigation does not assist the Court in its analysis. Thus, this factor favors Defendants.

Second, Louisiana may be interested in a commercial dispute relating to mineral interests; however, Defendants do not own the immovable property anymore, and the payments were received in Oklahoma. Additionally, no party is a citizen of Louisiana; thus, the interests of a Louisiana citizen are not being harmed. Even so, it is important to note that the Louisiana property and mineral interests might be harmed if payments are not going to the proper parties, and the state might take an interest in that. Thus, the second factor is neutral. Third, Plaintiffs are clearly interested in securing relief since they want to recoup the amounts incorrectly paid to Columbine. The third factor favors Plaintiffs.

Fourth, while Columbine no longer owns immovable property in Louisiana and received those payments in Oklahoma, the overpayments are related to the immovable property in Louisiana. Louisiana appears to be the only state that can efficiently administer justice since the only relationship between the parties exists in Louisiana. Thus, the fourth factor likely favors Plaintiffs. Fifth, Plaintiffs provide no evidence that litigating in Louisiana would advance any social policy; thus, the fifth factor favors Defendants. The analysis of all five factors comes out somewhat evenly as to both parties.

Plaintiffs' First Amended Complaint is riddled with conclusory and speculative allegations, which fail to make a prima facie showing of personal jurisdiction over all Defendants. Therefore, Defendants' first Motion (Record Document 13) is **GRANTED**,

16

and all of Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Jurisdiction (Record Document 13) is **GRANTED**. All of Plaintiffs' claims against Defendants are thereby **DISMISSED WITHOUT PREJUDICE**.

In its current form, the operative Complaint does not sufficiently establish personal jurisdiction over all Defendants. In their opposition, Plaintiffs do not request leave to amend; however, the Court, sue sponte, gives Plaintiffs' the opportunity to request leave to amend their First Amended Complaint to cure the deficiencies identified by the Court below. This opportunity does not mean the Court will automatically grant leave; rather, the Court, in its discretion, may grant leave if it deems appropriate. Additionally, amendment does not automatically mean this Court will have personal jurisdiction; rather, Plaintiffs will have to sufficiently plead and establish personal jurisdiction.

Given the potential for a second amended complaint, the Court will not decide the merits of Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (Record Document 13) at this time. Because the Court is giving Plaintiffs the opportunity to request leave to amend their First Amended Complaint, the Court is unsure, at this time, whether it has personal jurisdiction over Aviva. Therefore, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (Record Document 13) is **DENIED WITHOUT PREJUDICE**. Defendants may reassert this Motion if and when Plaintiffs file a second amended complaint.

An Order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 25th day of March, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE